# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

United States of America,

    Plaintiff,

           v.

Calvin Tuck – 1,

    Defendant.

Case No. 1:18cr023

Judge Michael R. Barrett

## ORDER

This matter is before the Court on Defendant Calvin Tuck's Motion to Suppress Evidence (Doc. 85), the Government's Response in Opposition (Doc. 88), and Defendant's Supplemental Authority (Doc. 93). Defendant moves to suppress all evidence and contraband seized from 5039 Casa Loma Boulevard Hamilton County, Ohio, on December 8, 2017 and argues that the search warrant obtained to search 5039 Casa Loma Boulevard violated his Fourth Amendment rights. (Doc. 85). Specifically, Defendant contends that the search warrant was not supported by sufficient probable cause, as the supporting affidavit did not establish the requisite nexus between the place to be searched and the items to be seized. (*Id.*).

## I. BACKGROUND

On June 27, 2018, the Court held an evidentiary hearing and argument on the "four corners of the affidavit" at issue. (Doc. 89); *see United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (holding that a court's "review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four-corners of

1

the affidavit."). At the hearing, the Government provided the Court with Exhibit A which contains the affidavit at issue, the search warrant at issue, and the return on search warrant which permitted officers to search the residence at 5039 Casa Loma Boulevard and four motor vehicles.[1] Following arguments, Defendant submitted Supplemental Authority in support of his Motion to Suppress in the form of the Sixth Circuit's recent decision in *United States v. Christian,* 893 F.3d 846 (6th Cir. 2018). (Doc. 93).

## II. ANALYSIS

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV.

Where an affidavit is submitted as the basis for probable cause in support of a search warrant, the Fourth Amendment requires that the affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause." *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003) (quoting *Illinois v. Gates*, 462 U.S. 213, 239 (1983)). "This requires 'a nexus between the place to be searched and the evidence sought,' 'at the time the warrant is issued.'" *Christian*, 893 F.3d at 853 (citing *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006), and *United States v. Hython*, 443 F.3d 480, 485 (6th Cir. 2006)). "The connection between the [location to

---

[1] Defendant does not contest the Government's search of the motor vehicles.

be searched] and the evidence of criminal activity must be specific and concrete, not 'vague' or 'generalized.'" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016).

> The probable-cause standard is practical and nontechnical. [ ] *Frazier,* 423 F.3d [at] 531 [ ]. In other words, a reviewing court should consider the "totality of the circumstances" rather than "engage in line-by-line scrutiny of the warrant application's affidavit." *United States v. Williams,* 544 F.3d 683, 686 (6th Cir. 2008). But the court must limit its "review of the sufficiency of the evidence supporting probable cause . . . to the information presented in the four-corners of the affidavit." *Frazier,* 423 F.3d at 531.

*Christian*, 893 F.3d at 853.

In *Christian*, in reversing the district court's denial of the defendant's motion to suppress, the Sixth Circuit found fault with the sufficiency of the affidavit as it related to the defendant's criminal history, a controlled buy, a confidential informant, and surveillance by law enforcement. As those areas of concern are similar to the areas of concern in this case, the Court will compare and contrast the affidavits using those areas. Before doing so, the Court notes that the affidavit in this case begins by setting forth, in sufficient detail, information regarding the Affiant's background and experience in narcotics investigations, including working with a team of investigators who are trained and experienced in narcotics investigations, interviewing numerous individuals arrested for various drug offenses, and familiarity of the methods that drug traffickers utilize for the sale and distribution of narcotics. Search Warrant Affidavit, page 2. The Affiant then explains how, in October 2017, the Affiant received information from a source which identified Defendant as a heroin trafficker in Cincinnati, Ohio, using the cellular phone number (513) 714-6919. *Id.* The Affiant explains that the Affiant confirmed Defendant's identification using personal knowledge of Defendant, a picture obtained from the Ohio Bureau of Motor Vehicles, and the source's visual identification of Defendant based on

3

that picture. *Id.* With that background, the Court turns to the areas of concern highlighted in *Christian*. The Court will begin by comparing the criminal histories of Christian and Defendant Tuck. The Court will then compare the controlled buys, confidential informants, and surveillance methods found in the two cases.

### CRIMINAL HISTORY - CHRISTIAN

> Christian has been convicted of several drug-related crimes over a nineteen-year period: (1) possession of cocaine in 1996, (2) an unspecified second controlled-substance offense in 2002, (3) delivery/manufacture of marijuana and possession of a firearm by a felon in 2009, and (4) delivery/manufacture of cocaine in 2011.

*Christian*, 893 F.3d at 852. The Sixth Circuit found indicia of Christian's criminal history to be sporadic, dated, and not inconsistent with occasional sales (*i.e.*, his sales were not protracted and continuous or ongoing and continuous). *Id.* at 862-63. The Sixth Circuit concluded "that Christian's prior criminal convictions, even considered with the eight-month-old controlled buy, d[id] not establish that he was engaged in protracted and continuous drug activity" and that "absent some 'independently corroborated fact that the defendant[ ] w[as a] known drug dealer[ ] at the time the police sought to search [his] home,' probable cause did not exist to search the Residence based on Christian's criminal record." *Id.* at 863 (citing *McPhearson*, 469 F.3d at 524).

### CRIMINAL HISTORY - TUCK

> In August of 2014, Tuck was arrested for multiple drug trafficking, drug possession and tampering with evidence charges (B1404582 and B1404361-B) by Cincinnati Police Department. Tuck was convicted and sentenced to six months in the Ohio Department of Corrections. In September of 2017, Tuck was arrested for trafficking in drugs and drug possession (B1705615–A), was indicted by the Hamilton County Grand Jury and is currently assigned to the Honorable Judge Thomas Heekin.

Search Warrant Affidavit, page 2. At the time of the search warrant, Defendant was under indictment for an alleged drug offense. Stated otherwise, Defendant's criminal history was detailed and recent.

**CONTROLLED BUYS AND CONFIDENTIAL INFORMANTS - CHRISTIAN**

> In December 2014, Officer Bush "had contact with a credible and reliable informant who provided information on several drug traffickers including Tyrone Christian." The affidavit states that the unnamed informant "provided names, nicknames, phone numbers, residences utilized by the drug traffickers and information regarding specific drug transactions," and that Officer Bush was "able to confirm much of the information provided."
>
> At the direction of Officer Bush, the informant conducted a controlled purchase of drugs from Christian at the Residence in January 2015, eight months before the warrant in question. The affidavit notes that the drugs purchased were field tested with positive results.
>
> "Within the last four months, [Officer Bush] has been involved in or received information from several debriefs of subjects who have stated that [ ] Christian is a large scale drug dealer. These subjects further stated that they have purchased large quantities of heroin and crack cocaine from Christian at 618 Grandville Avenue [ ] in the last four to five months."

*Christian*, 893 F.3d at 852. The affidavit in *Christian* described a sole controlled buy, using a single confidential informant, that occurred eight months prior to the execution of the search warrant. *Id.* at 860. The Sixth Circuit explained that

> "[S]tale information cannot be used in a probable cause determination." *United States v. Perry,* 864 F.3d 412, 414 (6th Cir. 2017) (quoting *United States v. Frechette,* 583 F.3d 374, 377 (6th Cir. 2009)); *see also United States v. Harris,* 255 F.3d 288, 299 (6th Cir. 2001) ("Because probable cause to search is concerned with facts relating to a presently existing condition, . . . there arises the unique problem of whether the probable cause which once existed has grown stale." (quoting *United States v. Spikes,* 158 F.3d 913, 923 (6th Cir. 1998))). Whether evidence is stale is a flexible inquiry that does not "create an arbitrary time limitation within which discovered facts must be presented to a magistrate." *United States v. Greene,* 250 F.3d 471, 480 (6th Cir. 2001) (quoting *Spikes,* 158 F.3d at 923). "A key but by no means controlling issue is the length of time between the events listed in the affidavit and the application for the warrant."

5

*United States v. Leaster,* 35 F. App'x 402, 406 (6th Cir. 2002). Courts should consider several factors, including:

[1] [t]he character of the crime (chance encounter in the night or regenerating conspiracy?), [2] the criminal (nomadic or entrenched?), [3] the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), [4] the place to be searched (mere criminal forum of convenience or secure operational base?).

*Greene,* 250 F.3d at 480-81 (quoting *Spikes,* 158 F.3d at 923).

*Christian*, 893 F.3d at 857-58. The *Christian* majority analyzed the four *Greene* factors and concluded, on balance, that the affidavit lacked sufficient information—indeed "almost no detail"—about the controlled buy and the informant involved. *Id.* at 859.

### CONTROLLED BUYS AND CONFIDENTIAL INFORMANTS - TUCK

In November of 2017, the Affiant utilized two separate confidential and reliable informants (hereinafter referred to as the CI#1 and CI#2) during the course of this investigation and began making controlled heroin purchases while under law enforcement supervision from Calvin Tuck. CI #1 and CI#2 are reliable in that they have provided information which has proven true and correct through independent investigations. CI#1 and CI#2 have also provided assistance, on independent investigations, that has led to the recovery of illegal narcotics and convictions of illegal drug traffickers. The Affiant showed CI#1 and CI#2 a photograph from the Ohio Bureau of Motor Vehicles and confirmed the identity of Calvin Tuck.

For each control heroin purchase, CI#1 and C #2's person and/or vehicle were searched before and after the drug transaction by the Affiant resulting in no US currency or unauthorized contraband found. At the Affiant's direction, CI#1 and CI#2 placed cellular phone calls to Tuck which were monitored by law enforcement personnel. CI#1 and CI#2 identified Tuck as the individual who sold him/her the heroin in each controlled heroin purchase. Following each drug transaction, the illegal narcotics were sent to the Hamilton County Crime Lab for testing resulting in a positive testing for heroin.

. . .

On November 13, 2017, the Affiant and other members of the Cincinnati Police Department utilized CI#1 to place a telephone call to Tuck at (513)-714-6919. During this telephone call, Tuck arranged to sell a quantity of heroin to CI#1 within the Cincinnati, Ohio area. Following the telephone

6

call, while under law enforcement supervision, CI#1 was driven by Officer Zeller to meet Tuck at the predetermined location within Cincinnati, Ohio. Once CI#1 and Officer Zeller were at the arranged meeting location, they observed a silver Nissan Maxima bearing Ohio license plate of HDY2116, parked in the lot. Officer Zeller pulled next to Tuck who was operating the silver Nissan Maxima. Tuck then gave CI#1 a quantity of heroin in exchange for US currency.

On November 27, 2017, the Affiant and other members of the Cincinnati Police Department utilized CI# 2 to place a telephone call to Tuck at (513) 714-6919. During this telephone call Tuck arranged to sell a quantity of heroin to CI#2 within the Cincinnati, Ohio area. Following the telephone call, while under law enforcement supervision, CI#2 drove to meet Tuck at the predetermined location within Cincinnati, Ohio. Once CI#2 was at the arranged meeting location, Tuck arrived operating a tan Chevrolet Malibu bearing Ohio license plate HBC3301. Tuck instructed CI#2 to drive to the next street and park. Tuck then drove alongside CI#2's vehicle and gave CI#2 a quantity of heroin in exchange for US currency.

. . .

On November 30, 2017, the Affiant and other members of the Cincinnati Police Department utilized CI#2 to place a telephone call to Tuck at (513) 714-6919. During the telephone call, Tuck arranged to sell a quantity of heroin to CI#2 within the Cincinnati, Ohio, area. Following the telephone call, while under law enforcement supervision, CI#2 drove to meet Tuck at the location, Tuck arrived operating a Hyundai Santa Fe bearing Ohio license plate GTJ2515. Tuck instructed CI#2 to follow him down the street. Tuck turned into a parking lot, turned his vehicle around and drove up to CI#2's vehicle. Tuck gave CI#2 a quantity of heroin in exchange for US currency.

On December 5, 2017, the Affiant and other members of the Cincinnati Police Department utilized CI#2 to place a telephone call to Tuck at (513)-714-6919. During the telephone call, Tuck arranged to sell a quantity of heroin CI#2 within the Cincinnati, Ohio area. Following the telephone call, while under law enforcement supervision, CI#2 drove to meet Tuck at the predetermined location within Cincinnati, Ohio. Once CI#2 was at the arranged meeting location, Tuck told CI#2 he was one street over and waiting. The Affiant was monitoring the real time tracking and discovered Tuck was on Casa Loma Boulevard, one street over. Tuck arrived operating a Nissan Altima bearing Ohio license plate GTE1817 and waved for CI#2 to follow. The Affiant and remaining surveillance teams followed as Tuck and CI#2 turned onto a side street. As Tuck attempted to sell CI#2 a quantity of heroin, he suddenly fled from the location before completing the drug sale with CI#2. A telephone call to Tuck from the CI#2 was made

> following this. Tuck told CI#2 he saw another vehicle following closely behind CI#2's vehicle and became nervous.

Search Warrant Affidavit, page 2-3. Here, the affidavit sufficiently establishes that the Cincinnati Police Department considered the two confidential informants reliable informants in independent narcotic investigations. *Id.* Moreover, the affidavit reflects four controlled buys, involving the two reliable confidential informants, dated 3, 8, 11, and 25 days prior to the execution of the search warrant (all while Defendant was under indictment for an alleged drug offense). *Id.* Based on the foregoing, and considering the four factors found in *Greene*, *see* 250 F.3d at 480-81, it is clear that Defendant's criminal activity was on going as of December 8, 2017.

## SURVELILLANCE - CHRISTIAN

> On September 3, 2015—the date that the warrant was requested and issued—surveillance of the Residence was established. A subject later identified as Rueben Thomas was seen "walk[ing] away from the area of 618 Grandville Avenue and leav[ing] the area in a vehicle." Surveillance of the vehicle continued until officers conducted a traffic stop for a civil infraction. During the stop, officers seized approximately 20 grams of heroin from the vehicle. Thomas admitted to being on Grandville Avenue, but denied being at the Residence, "contrary to observations of the law enforcement officers."

*Christian*, 893 F.3d at 852. The Sixth Circuit emphasized that the affidavit did not state whether officers saw the subject with the defendant or saw the subject enter and exit the residence. *Id.* at 854. The Circuit held that the affidavit's statement that the subject was "in the area" of the defendant's residence was too vague of a description to place the subject at or inside residence. *Id.*

8

## SURVELILLANCE - TUCK

On November 30, 2017, the Affiant obtained [ ] a search warranted . . . for communications records on cellular number (513)714-6919. From this legal demand, the Affiant determined the cellular number (513)714-6919 was regularly present in the area of 5039 Casa Loma Boulevard.

. . .

Between the dates of December 5-7, 2017, the Affiant established surveillance at 5039 Casa Loma Boulevard on multiple occasions. On December 5, 2017, at approximately 1630 hours, the Affiant conducted surveillance at 5039 Casa Loma Boulevard. The Affiant observed Tuck standing in the street talking on the telephone. Tuck was directing a gray Cadillac bearing Ohio license plate FXB1430 into the driveway. Continuing surveillance, the Affiant watched Tuck enter and exit the residence multiple times. Tuck would enter a gray Nissan Altima when exiting the residence. This is the same vehicle Tuck was operating on the earlier attempted controlled buy. Tuck drove off several times in the gray Nissan Altima and would quickly return. Throughout the surveillance, the Affiant noticed multiple vehicles arrived at 5039 Casa Loma Boulevard. These vehicles would only stay for a short period before leaving.

On December 6, 2017, the Affiant conducted surveillance at 5039 Casa Loma Boulevard. A known associate and drug trafficker, Pierre Sneed, arrived operating a white Acura. Mr. Sneed is a convicted drug trafficker and is currently under indictment for drug trafficking and drug possession. Cortez Tuck was also present and operating a white Ford Fusion bearing New Jersey license plate A22HSW. Cortez Tuck has a previous arrest for drug possession. Shortly after, Calvin Tuck arrived in a black Jaguar bearing Ohio license plate HFH6643 driven by Daniel Williams. Mr. Williams is a convicted drug trafficker and is currently under indictment for drug trafficking. All entered the target location. At approximately 1608 hours, a black Nissan Sentra also arrived and parked in the driveway. The driver did not exit the vehicle. Calvin Tuck exited the target residence wearing a black t-shirt and red sweat pants. The Affiant observed Calvin Tuck grabbing the front part of his sweat pants as if not allowing an object to fall from them. Calvin Tuck entered the front passenger side of the vehicle. Approximately 2 minutes later Calvin Tuck exited the vehicle and walked back inside the target residence. Calvin Tuck was no longer holding onto his sweat pants. The Nissan Sentra left the area. Throughout the surveillance, Calvin Tuck left multiple times and quickly returned driving the same Nissan Altima from the day prior.

Search Warrant Affidavit, page 4. As stated above, the affidavit reveals that Defendant used cell phone number (513)714-6919 in each of the four controlled buys throughout November 2017 and early December 2017. *Id.* at 3. The affidavit shows that the November 30, 2017, search warrant confirmed that the cell phone operating cell phone number (513)714-6919 was regularly present in the area of 5039 Casa Loma Boulevard. *Id.* The affidavit also states that the Affiant personally saw Defendant enter and exit 5039 Casa Loma Boulevard multiple times on December 5, 2017, and December 6, 2017. *Id.* at 4.

Based on the totality of the circumstances—including but not limited to (1) Defendant's detailed and recent criminal history; (2) evidence of four controlled buys from Defendant, all within one month of the execution of the search warrant, involving two separate reliable confidential informants; (3) the November 30, 2017, cell phone report and Defendant's use of that phone number during each of the four controlled buys; and (4) the Affiant's surveillance described above—the Court finds that the affidavit established that there was a fair probability that evidence of narcotic crimes would be found at 5039 Casa Loma Boulevard. Taken together, Defendant's criminal history, the use of two reliable confidential informants, evidence of four controlled buys, and the details of the Affiant's surveillance and cell phone report, allow the Court to find the requisite nexus between 5039 Casa Loma Boulevard and evidence of drug trafficking activity present and that this nexus is fixed, specific, and concrete. The Court finds the magistrate had probable cause to issue the December 8, 2011, search warrant.[2]

---

[2] In light of this finding, the Court will not, and need not, address the good faith exception to the exclusionary rule found in *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 82 L.Ed. 2d 677 (6th Cir. 1984).

## III. CONCLUSION

In accordance with the above, Defendant's Motion to Suppress Evidence (Doc. 85) is **DENIED**.

**IT IS SO ORDERED.**

                                                    s/ Michael R. Barrett
                                                    Michael R. Barrett
                                                    United States District Judge